UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSHUA S. LEWIS,            ) | | |
|     Plaintiff,         ) | | |
|                             ) | | |
| vs.                         ) | | 1:11-cv-1421-SEB-TAB |
|                             ) | | |
| GAYLOR, INC.                ) | | |
|     Defendant.        ) | | |
|                             ) | | |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS**

**I.      Introduction**

Defendant's motion to dismiss [Docket No. 16] asks the Court to depart from the Seventh Circuit's decision in *McDaniel v. University of Chicago*, 548 F.2d 689, 695 (7th Cir. 1977), which held that "implying a private right of action in the Davis-Bacon Act is necessary to effectuate the intention of Congress in passing the statute." When presented with such an argument, the district court's foremost responsibility is to abide by the doctrine of *stare decisis*, where "decisions of a superior court in a unitary system bind the inferior courts." *Colby v. J.C. Penny Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987). However, in limited circumstances, district courts may depart from Seventh Circuit precedent if the district court is "powerfully convinced" that the Seventh Circuit would overrule its previous decision at the first opportunity. *Id.*

This case presents one of those limited circumstances. Events subsequent to *McDaniel* make it almost certain that the Seventh Circuit would depart from its holding in that case. In particular, in *Universities Research Association v. Coutu*, 450 U.S. 754 (1981), the Supreme Court although not directly addressing the validity of *McDaniel*, employed reasoning contrary to that in *McDaniel*. The reasoning in *Coutu* and numerous other cases compels the conclusion that

the Seventh Circuit would depart from *McDaniel* and hold there is no implied private right of action under the Davis-Bacon Act to enforce contracts with DBA stipulations. With respect to Plaintiff's Common Construction Wage Act claim, Plaintiff does not cite an Indiana Supreme Court case recognizing that an implied private right of action exists under the CCWA, and Plaintiff has not provided the Court with any additional basis that adequately supports such a right. As more fully set forth below, the Magistrate Judge finds that no implied private right of action exists under either act and therefore recommends that Defendant's motion to dismiss [Docket No. 16] be granted.[1]

## II.  Discussion

### A.  *Davis-Bacon Act*

The parties dispute whether there is an implied private right of action under the DBA to enforce a contract with DBA stipulations. In *McDaniel*, the Seventh Circuit held "that implying a private right of action in the Davis-Bacon Act is necessary to effectuate the intention of Congress in passing the statute." 548 F.2d at 695. The Seventh Circuit began its analysis by looking to the four-part test articulated in *Cort v. Ash*, 422 U.S. 66, 78 (1975). The first part of the test required the court to address "[w]hether a laborer like the members of the plaintiff class is the 'especial' beneficiary of the Davis-Bacon Act." *McDaniel*, 548 F.2d at 692 ("If he is not [an "especial" beneficiary], that may well dispose of the case at the outset. If he is, we have only passed the first hurdle."). The court reasoned:

---

[1]While Defendant's motion to dismiss was pending, Plaintiff dismissed Count I of the complaint against John Gaylor and unknown Defendants and dismissed Count II against all Defendants. [Docket Nos. 33, 36.] Count I against Gaylor, Inc. is the only remaining claim, which consists of Plaintiff's DBA and CCWA claims.

> But for the plaintiff class to be the special beneficiaries does not mean that they must be the exclusive beneficiaries; that local contractors and communities may benefit from the Act does not mean that it was not principally directed toward the laborers and mechanics. The Davis-Bacon Act by its terms mandates that the contract between the federal government and the contractor provide that laborers and mechanics hired by the contractor be paid the minimum wages determined by the Secretary of Labor to be prevailing for the corresponding class of laborers in the locality. The laborer is not only the principal beneficiary of the statute, but also a third-party beneficiary of a contract provided for by the statute. Moreover, the legislative history of the Davis-Bacon Act and subsequent congressional comment on the Act reveals that the fundamental purpose of the Act was to benefit laborers and mechanics by paying them wages prevailing in private industry:
> 
> "The purpose of this measure is to require contractors and subcontractors engaged in constructing, altering or repairing any public building of the United States or of the District of Columbia situated within the geographic limits of the United States to pay their employees the prevailing wage rates when such wage rates have been established by private industry."
> 
> "Almost from the inception of Federal construction activity Congress recognized the necessity for providing basic wage protection to local laborers and mechanics employed on the construction. It was precisely for the purpose of providing this protection that Congress passed the Davis-Bacon Act more than 30 years ago. Virtually all segments of our society banded together to demand its adoption."
> 
> Moreover, the Supreme Court of the United States recognized in *United States v. Binghamton Const. Co., Inc.*, 347 U.S. 171 (1954) that laborers are the primary beneficiaries of the Davis-Bacon Act:
> 
> "The language of the (Davis-Bacon) Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects."

*Id.* at 693 (citations omitted). After considering the remaining three factors, the court concluded there is an implied private right of action.

Nearly a year after *McDaniel*, the Supreme Court clarified the four-part test in *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979), by explaining that the first factor is "answered by looking to the language of the statute itself." Two years later, relying on its approach in *Cannon* the Supreme Court addressed whether Congress intended to "confer an implied private right of action for back wages under a contract that administratively had been determined not to call for Davis-Bacon work." *Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 767–68 (1981). As

in *McDaniel*, *Coutu* noted that previous opinions recognize that the statute is a "minimum wage law designed for the benefit of construction workers." *Id.* at 771. However, the Court further explained "the fact that an enactment is designed to benefit a particular class does not end the inquiry; instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation." *Id.* Addressing the language of the statute, the Court opined:

> Congress intended to create a cause of action "where the language of the statute explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case." Conversely, it has noted that there "would be far less reason to infer a private remedy in favor of individual persons" where Congress, rather than drafting the legislation "with an unmistakable focus on the benefitted class," instead has framed the statute simply as a general prohibition or a command to a federal agency. Section 1 of the Davis-Bacon Act requires that certain stipulations be placed in federal construction contracts for the benefit of mechanics and laborers, but it does not confer rights directly on those individuals. Since § 1 is simply "phrased as a directive to federal agencies engaged in the disbursement of public funds," its language provides no support for the implication of a private remedy.
> Moreover, § 3 of the Act demonstrates that in this context, as in others, "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." Under § 1 of the Act, the contracting agency is entitled to withhold "so much of accrued payments" as may be considered necessary to pay to laborers and mechanics the difference between "the rates of wages required by the contract" and the rates actually paid. If the wages so withheld are insufficient to reimburse the laborers and mechanics, then § 3 confers on them the same "right of action and/or intervention" conferred by the Miller Act on laborers and materialmen. The absence of a comparable provision authorizing a suit for back wages where there are no prevailing wage stipulations in the contract buttresses our conclusion that Congress did not intend to create such a remedy.

*Id.* at 771–73 (citations omitted).

The Seventh Circuit has not revisited *McDaniel* since *Cannon* and *Coutu*. However, in *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1240 n.27 (7th Cir. 1980), the Seventh Circuit recognized that they reached their decision in *McDaniel* "without the guidance of the Supreme Court's pronouncements in *Cannon v. University of Chicago* . . . ." Nevertheless, the validity of *McDaniel* was not an issue in *Simpson* and therefore was not addressed. Several federal circuit

courts, however, have had the opportunity to consider *Cannon* and *Coutu* when determining whether the DBA creates an implied private right of action to enforce a contract with DBA stipulations. All of these circuit courts have concluded that no such implied private right exists. *Grochowski v. Phx. Constr.*, 318 F.3d 80 (2d Cir. 2003) ("To allow a third-party private contract action aimed at enforcing those wage schedules would be 'inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute.'"); *Operating Eng'rs Health & Welfare Tr. Fund v. JWJ Constr. Co.*, 135 F.3d 671, 676 (9th Cir. 1998) ("For the reasons set out in *Coutu*, we agree with the district court, and the majority of circuit courts that have reached the issue, that section one of the Davis-Bacon Act, 40 U.S.C. § 276a, does not create a private cause of action for employees."); *Bullock v. United States*, 883 F.2d 1023 (9th Cir. 1989) (unpublished) (explaining that while *Coutu* was "limited to the determination that the Act did not confer a private right of action for back wages under a contract that does not contain Davis-Bacon stipulations," *Coutu*'s analysis of congressional intent is relevant to determining whether a private cause of action exists for individuals); *Bane v. Radio Corp. of Am.*, 811 F.2d 1504 (4th Cir. 1987) (unpublished) ("[T]here is no implied right of private action under the Davis-Bacon Act."); *Weber v. Heat Control Co.*, 728 F.2d 599, 599 (3d Cir. 1984) (same); *see also U.S. v. Capeletti Bros. Inc.*, 621 F.2d 1309 (5th Cir. 1980) (concluding no implied right exists prior to the decision in *Coutu* but after the decision in *Cannon*).

Numerous district courts have also reached the same conclusion. *See, e.g.*, *Robinson v. Ohio Hous. Fin. Agency*, No. 1:11-CV-352, 2011 WL 7789840, at *4 (S.D. Ohio Dec. 15, 2011); *Johnson v. Prospect Waterproofing Co.*, 813 F. Supp. 2d 4, 7–9 (D.D.C. 2011); *Ibrahim v.*

*Mid-Atl. Air of DC, LLC*, 802 F. Supp. 2d 73, 75–76 (D.D.C. 2011); *White v. MPW Indus. Servs., Inc.*, No. 1:05-CV-162, 2006 WL 543829, at *1–2 (E.D. Tenn. Mar. 6, 2006); *Mathiowetz Constr. Co. v. Minn. Dep't of Transp.*, No. 01-548, 2002 WL 334394, at *3 (D. Minn. Feb. 27, 2002); *U.S. ex rel. Bradbury v. TLT Const. Corp.*, 138 F. Supp. 2d 237, 240 (D.R.I. 2001); *Peatross v. Global Assocs.*, 849 F. Supp. 746, 748–49 (D. Haw. 1994); *see also Cox v. NAP Const. Co.*, 891 N.E.2d 271, 275–76 (N.Y. 2008) (stating that *Simpson* and *Coutu* cast doubt on the validity of *McDaniel*); *Stampco Constr. Co. v. Guffey*, 572 N.E.2d 510, 516 (Ind. Ct. App. 1991) (Buchanan, J., dissenting) ("The Supreme Court impliedly overruled *McDaniel*'s holding in *Coutu* when it observed the analysis used in *Coutu* was applicable to the question considered in *McDaniel*."). In fact, one district court within the Seventh Circuit specifically recognizes that *Coutu* overrules *McDaniel*. *Faerber Elec. Co. v. Atlanta Tri-Com, Inc.*, 795 F. Supp. 240, 244 n.2 (N.D. Ill. 1992) ("In *McDaniel* II, the Seventh Circuit again found there was a private right of action under the Davis-Bacon Act. That holding was overruled in *Coutu* . . . .").

It is the rare case in which the Court would consider deviating from what appears to be controlling Seventh Circuit precedent. However, when a district court is powerfully convinced that the Seventh Circuit would depart from its prior decision at the first opportunity, the district court may depart from that decision. *See Colby v. J.C. Penny Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) ("We are bound to follow a decision of the Supreme Court unless we are powerfully convinced that the Court would overrule it at the first opportunity."); *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) ("If, however, events subsequent to the last decision by the higher court approving the doctrine—especially later decisions by that court, or statutory changes—make it almost certain that the higher court would repudiate the doctrine if

6

given a chance to do so, the lower court is not required to adhere to the doctrine."). Based on the analysis in *Cannon*, *Coutu*, and numerous other courts, the Magistrate Judge is powerfully convinced that the Seventh Circuit would depart from its decision in *McDaniel* at the first opportunity.

Plaintiff attempts to counter this overwhelming body of case law based on three cases in which courts refused to depart from *McDaniel* despite the Supreme Court's decisions in *Cannon* and *Coutu*. *See Laborers' Pension Fund v. Concrete Structures of Midwest, Inc.*, No. 91-C-8223, 1992 WL 170548, at *8 (N.D. Ill. July 16, 1992); *Stampco Constr. Co. v. Guffey*, 572 N.E.2d 510, 512 (Ind. Ct. App. 1991); *Laborers' Pension Fund v. Ned Byrne Concrete, Inc.*, No. 89-C-8574, 1990 WL 171768, at *1 (N.D. Ill. Oct. 30, 1990). These cases assert that the Supreme Court in *Coutu* specifically explained that the issue in *McDaniel* was different from the issue presented in *Coutu*, and therefore *McDaniel* is still valid. *Concrete Structures*, 1992 WL 170548, at *8 ("The Court declined to decide whether Davis-Bacon creates the implied private right of action recognized by the Seventh Circuit in *McDaniel*."); *Stampco*, 572 N.E.2d at 512 n.4 ("Although the United States Supreme Court dealt with a related issue regarding the Davis Bacon Act in *Universities Research Ass'n v. Coutu*, 450 U.S. 754 (1981), the Supreme Court clearly stated that the issue presented in *McDaniel* differed from the issue in *Coutu*."); *Ned Byrne*, 1990 WL 171768, at *1 ("In *Coutu*, the Supreme Court expressly distinguished *McDaniel* and stated it was not deciding the question of whether there is a private right of action to enforce a contract that, unlike the one in *Coutu*, contains a specific Davis-Bacon Act stipulation.").

The Magistrate Judge respectfully suggests that the analysis in these cases is not persuasive. The question is whether the Court is powerfully convinced that the Seventh Circuit

would depart from its decision in *McDaniel* rather than whether the Supreme Court explicitly overturned *McDaniel* in *Coutu*. *See Colby*, 811 F.2d at 1123; *Olson*, 806 F.2d at 734. The courts in *Concrete Structure*, *Stampco*, and *Ned Byrne* are correct that the Supreme Court in *Coutu* specifically states that they "do not decide whether the Act creates an implied private right of action to enforce a contract that contains specific Davis-Bacon Act Stipulations." *Coutu*, 450 U.S. at 769. However, these cases do not dig deeper into *Coutu* and fail to consider whether the reasoning set forth in *Coutu* is directly related to whether a private right exists to enforce DBA contract stipulations. As the Ninth Circuit recognized in *Bullock*, while the decision in *Coutu* was limited to back wages under a contract administratively determined not to call for DBA work, the reasoning employed in *Coutu* is directly relevant to whether an implied right exists to enforce a contract with DBA stipulations. 883 F.2d at 1023. As *Coutu* explains, "§ 1 is simply 'phrased as a directive to federal agencies engaged in the disbursement of public funds,' its language provides no support for the implication of a private remedy." 450 U.S. at 771–73. Moreover, § 3 demonstrates that if Congress intended to provide a private damages remedy, it knew how to do so. *Id.* Thus, the cases cited by Plaintiff do not alter the fact that the Magistrate Judge is powerfully convinced the Seventh Circuit would depart from *McDaniel* and find that no implied private right exists.[2] Accordingly, the Magistrate Judge recommends that Plaintiff's DBA claim be dismissed.

---

[2] In light of this conclusion, the Court need not consider the remaining three factors. *See McDaniel*, 548 F.2d at 692 ("If he is not [an "especial" beneficiary], that may well dispose of the case at the outset. If he is, we have only passed the first hurdle.").

### B. Common Construction Wage Act

The parties similarly dispute whether a private cause of action exists under CCWA. The Indiana Supreme Court has not decided the issue, but a divided Indiana Court of Appeals panel held that an implied right of action exists under CCWA. *See Stampco Const. Co., Inc. v. Guffey*, 572 N.E.2d 510 (Ind. Ct. App. 1991). In reaching this decision, the court of appeals majority adopted the Seventh Circuit's reasoning in *McDaniel*. *Id.* ("Although no provision explicitly authorizes a civil suit for violation of the Indiana statute, we adopt the Seventh Circuit's analysis of the federal statute and find an implied right of action in the Indiana statute."). *Stampco* also asserts that their "ruling is consistent with the Indiana cases recognizing the right of employees of public contractors to sue as third party beneficiaries for wages on a contract between the contractor and the public." *Id.* (citing *Ind. State Bldg. & Constr. Trades Council v. Warsaw Cmty. Sch. Corp.*, 493 N.E.2d 800, 805 (1986)).

The Magistrate Judge disagrees with the *Stampco* majority. As discussed, the Seventh Circuit's decision in *McDaniel* did not have the benefit of the Supreme Court's guidance, and should the Seventh Circuit have the opportunity to revisit *McDaniel*, the Magistrate Judge is powerfully convinced it would reach a different conclusion. Judge Buchanan's *Stampco* dissent unmistakably reflects this sentiment. *Stampco*, 572 N.E.2d at 516 (examining the disconnect between *McDaniel* and *Coutu* and asserting that "the flawed and obsolete analysis of *McDaniel*" should not be relied on to conclude the "Indiana prevailing wage statutes, Ind. Code § 5-16-7-1 to -5 (1990), also confer private causes of action . . . .").

Moreover, *Stampco*'s conclusion is not supported by "Indiana cases." *Stampco* only cites *Indiana State Building & Construction Trades Council v. Warsaw Community School Corp.*, 493

9

N.E.2d 800, 805 (1986), which does not cite any Indiana case supporting an implied right under CCWA.  Rather, *Warsaw* cites to 65 Am. Jur. 2d Public Works and Contracts § 214 (1972), which is a nonbinding source drafted in 1972 before the Supreme Court's decision in *Cannon* and *Coutu*.  The updated version of 65 Am. Jur. 2d Public Works and Contracts § 214 (2012), does not reflect that an implied right of action exists under the CCWA or any other statute.  Thus, *Stampco*'s reliance on *McDaniel* and *Warsaw* is an inadequate basis for concluding that an implied private right of action exists under CCWA.  *See Gen. Accident Ins. Co. of Am. v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996) (explaining when the Indiana Supreme Court has not addressed an issue, the decisions of the Indiana Court of Appeals provide a "strong indication of how it believes the Supreme Court would decide a similar question, unless there is a persuasive reason to believe otherwise").  Plaintiff cites no other authority supporting such a right.  Accordingly, nothing before the Court suggests that an implied private right of action is available under CCWA.  The Magistrate Judge therefore recommends that Plaintiff's CCWA claim be dismissed.

### III.   Conclusion

It is rare for the Court to consider deviating from what appears to be controlling Seventh Circuit precedent.  This case, however, presents one of those limited circumstances.  The reasoning in *Cannon*, *Coutu*, and numerous other cases powerfully convinces the Magistrate Judge to conclude that the Seventh Circuit would depart from its decision in *McDaniel* at the first opportunity.  Moreover, Plaintiff has failed to provide adequate authority to support its position that an implied right of private action exists under CCWA.

Accordingly, the Magistrate Judge recommends that Defendant's motion to dismiss

[Docket No. 16] be granted.  Plaintiff's Davis-Bacon Act and Common Construction Wage Act claims under Count I should be dismissed.  Since Plaintiff has previously dismissed Count II against all Defendants [Docket Nos. 33, 36], the Magistrate Judge further recommends that this case be dismissed with prejudice in its entirety and a judgment issue against Plaintiff Joshua Lewis and in favor of Defendant Gaylor, Inc.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Dated:  07/20/2012

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Elijah D. Baccus
ALLOTTA FARLEY WICHMAN CO. LPA
ebaccus@afwlaw.com

Stephen W. Lyman
HALL RENDER KILLIAN HEATH & LYMAN
slyman@hallrender.com

Marilyn Lee Widman
ALLOTTA FARLEY & WIDMAN CO., LPA
mwidman@afwlaw.com

Craig M. Williams
HALL RENDER KILLIAN HEATH & LYMAN
cwilliams@HallRender.com